# SETTLEMENT AGREEMENT

Plaintiffs The Wilderness Society, BARK, Center for Biological Diversity, Defenders of Wildlife, Great Old Broads for Wilderness, Klamath-Siskiyou Wildlands Center, National Parks Conservation Association, National Trust for Historic Preservation, Natural Resources Defense Council, Oregon Natural Desert Association, Sierra Club, Southern Utah Wilderness Alliance, Western Resource Advocates, Western Watersheds Project, and County of San Miguel, Colorado ("Plaintiffs"), and Federal Defendants United States Department of the Interior ("DOI"), Kenneth L. Salazar, Secretary of the Interior; United States Bureau of Land Management ("BLM"); Robert Abbey, Director, BLM; United States Department of Agriculture; Tom Vilsack, Secretary of Agriculture; United States Forest Service ("FS"); Tom Tidwell, Chief of the Forest Service; United States Department of Energy ("DOE"); and Steven Chu, Secretary of Energy ("Defendants") (collectively the "Parties"), by and through their undersigned counsel, hereby agree and stipulate as follows:

WHEREAS, on July 7, 2009, Plaintiffs filed the Complaint in *The Wilderness Society, et al. v. United States Department of the Interior, et al.*, No. 3:09-cv-03048-JW (N.D. Cal.), which Plaintiffs amended on September 14, 2009;

WHEREAS Plaintiffs' Amended Complaint alleges violations of the Energy Policy Act of 2005, P.L. 109-58 ("EPAct"), the National Environmental Policy Act, 42 U.S.C. § 4321 *et seq*. ("NEPA"), the Federal Land Policy and Management Act, 43 U.S.C. § 1763 *et seq.* ("FLPMA"), the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* ("ESA"), and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA");

WHEREAS Section 368 of the EPAct, 42 U.S.C. § 15926(a), directs the Secretaries of Agriculture, Commerce, Defense, Energy, and Interior, in consultation with the Federal Energy Regulatory Commission, States, tribal or local units of government as appropriate, affected utility industries, and other interested persons, to designate corridors for oil, gas, and hydrogen

pipelines and electricity transmission and distribution facilities on federal land, beginning with 11 western States ("section 368 Corridors");

WHEREAS Section 368 of the EPAct further directs the Secretaries of Agriculture, Commerce, Defense, Energy, and Interior to "perform any environmental reviews required to complete the designation" of the corridors and to formalize the designations by "incorporat[ing] the designated corridors into the relevant agency land use and resource management plans or equivalent plans," 42 U.S.C. §§ 15926(a)(2) and 3;

WHEREAS, on November 20, 2008, Defendants issued a Final Programmatic Environmental Impact Statement for the section 368 Corridors, 73 Fed. Reg. 72,521 (Nov. 28, 2008);

WHEREAS, on January 14, 2009, the Deputy Assistant Secretary, Land and Minerals Management, signed a Record of Decision, amending 92 BLM land use plans to incorporate designation of the Section 368 Corridors;

WHEREAS, on January 14, 2009, the Undersecretary of the Department of Agriculture signed a Record of Decision amending 38 National Forest Land Management plans to incorporate designation of the Section 368 Corridors;

WHEREAS the Parties wish to implement this Settlement Agreement to resolve Plaintiffs' Amended Complaint in *The Wilderness Society, et al. v. United States Department of the Interior, et al.*, No. 3:09-cv-03048-JW (N.D. Cal.), and thereby avoid protracted and costly litigation and preserve judicial resources;

WHEREAS the Parties have agreed to a settlement of these matters without any adjudication or admission of fact or law by any party; and

WHEREAS the Parties believe that this Agreement is in the public interest; the Parties now agree as follows:

# I.  SCOPE OF AGREEMENT

A.      This Agreement shall constitute a complete and final settlement of Plaintiffs' Amended

Complaint in *The Wilderness Society, et al. v. United States Department of Interior, et al.*, No.

3:09-cv-03048-JW (N.D. Cal.).

B.      This Agreement in no way affects the rights of the United States as against any person

not a party hereto.

C.      Nothing in this Agreement shall constitute an admission of fact or law by any party.  This

Agreement shall not be used or admitted in any proceeding against a party over the objection of

that party.

 D.      This Settlement Agreement constitutes the final, complete, and exclusive agreement and

understanding between the Parties and supersedes all prior agreements and understandings,

whether oral or written, concerning the subject matter hereof.  No other document, nor any

representation, inducement, agreement, understanding, or promise, constitutes any part of this

Settlement Agreement or the settlement it represents, nor shall it be used in construing this

Settlement Agreement.  It is further expressly understood and agreed that this Agreement was

jointly drafted by the Parties.  Accordingly, the Parties agree that any and all rules of construc-

tion to the effect that ambiguity is construed against the drafting party shall be inapplicable in

any dispute concerning the terms or interpretation of this Agreement.

E.      This Agreement shall be governed by and construed under federal law.

F.      Nothing in this Settlement Agreement shall constitute, or be construed to constitute, a

waiver of sovereign immunity by the United States.  Nothing in the terms of this Agreement

shall be construed to limit or modify the discretion accorded Defendants by the APA, the EPAct,

NEPA, FLPMA, the ESA, or by general principles of administrative law.

G.       The Parties agree that Defendants' obligations under this Settlement Agreement are

contingent upon the availability of appropriated funds and that nothing contained in this

Settlement Agreement shall be construed as a commitment or requirement that Defendants

3

obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. §1341, or other applicable law.

## II. SPECIFIC PROVISIONS

A.     This Agreement consists of the following five provisions:  an interagency Memorandum of Understanding ("MOU") addressing periodic corridor reviews; agency guidance; training; corridor study; and IM 2010-169.  The objectives of these settlement provisions are to ensure that future revision, deletion, or addition to the system of corridors designated pursuant to section 368 of EPAct consider the following general principles:  location of corridors in favorable land-scapes, facilitation of renewable energy projects where feasible, avoidance of environmentally sensitive areas to the maximum extent practicable, diminution of the proliferation of dispersed rights-of-way ("ROWs") crossing the landscape, and improvement of the long-term benefits of reliable and safe energy transmission.  In addition, revisions, deletions, or additions to section 368 corridors are to be made through an open and transparent process incorporating consultation and robust opportunities for engagement by tribes, states, local governments, and other interested parties.

1.     <u>Interagency MOU</u>:  The BLM, FS, and DOE (the "Agencies") will periodically review the section 368 corridors, as provided in Section 1.a.-c. below, on a regional basis to assess the need for corridor revisions, deletions, or additions.  The agencies will establish an MOU describing the interagency process for conducting these reviews, the types of information and data to be considered, and the process for incorporating resulting recommendations in BLM and FS land use plans.  DOE's role will be limited to providing technical assistance in the areas of transmission adequacy and electric power system operation, as needed.  As part of the periodic review process, the BLM and the FS will re-evaluate those corridors identified by plaintiffs as having specific environmental issues, attached as Exhibit A.[1]  The BLM and the FS

---

[1] Corridors of Concern:  The corridors identified by plaintiffs are referred to here as "corridors of concern."

will also concurrently review their existing Interagency Operating Procedures ("IOPs") to identify any revisions, deletions, and additions necessary.

These items will comprise the elements of an interagency MOU to establish a process for periodic review of section 368 corridors and the IOPs.

a.      **Interagency Workgroup:**

- The agencies will establish an interagency workgroup composed of national office and field personnel, as appropriate.

- The workgroup will identify new relevant information (below at b.) that is pertinent to the consideration of section 368 corridors.

- The workgroup shall examine this new relevant information, review the corridors based on this information, and develop recommendations for any revisions, deletions, or additions to the section 368 corridors.

- The BLM and the FS shall ensure that recommendations are conveyed to appropriate agency managers and staff and that these recommendations are fully considered, as appropriate under applicable law, regulations, and agency policy and guidance.

- The BLM and the FS shall ensure that the siting principles (below at c.) are fully considered and public, tribal, and governmental involvement commitments (below at f.) are fully met.

b.      **Review materials:**  The new relevant information that the workgroup will review includes, but is not limited to:

- Results of the joint studies of electric transmission needs and renewable energy potential currently being conducted by the Western Electricity Coordinating Council ("WECC") and the Western Governors' Association ("WGA"), and funded by the DOE;

- Results of BLM's eco-regional assessments that characterize the ecological values across regional landscapes;

5

- Agency Corridor Study of current use of section 368 corridors and IOPs (below at Section 4.);
- Other on-going resource studies, such as the WGA wildlife corridor study, the BLM's National Sage-Grouse Habitat Conservation Strategy, and the State of Wyoming's sage grouse strategy; and
- Current studies and other factors, such as states' renewable portfolio standards, that address potential demand, source, and load with particular regard to renewable energy.

c.     **Corridor Siting Principles**:  The Agencies shall review the following areas to ensure that the general principles listed here were considered in siting the current corridors, especially with regard to efficient use of the landscape:  (i) northeastern California and northwestern Nevada, (ii) southern California, southeastern Nevada, and western Utah, and (iii) southern Wyoming, northeastern Utah, and northwestern Colorado.  The BLM and the FS will make future recommendations for revisions, deletions, and additions to the section 368 corridor network consistent with applicable law, regulations, agency policy and guidance, and will also consider the following general principles in future siting recommendations:

- Corridors are thoughtfully sited to provide maximum utility and minimum impact to the environment;
- Corridors promote efficient use of the landscape for necessary development;
- Appropriate and acceptable uses are defined for specific corridors; and
- Corridors provide connectivity to renewable energy generation to the maximum extent possible while also considering other sources of generation, in order to balance the renewable sources and to ensure the safety and reliability of electricity transmission.

6

d.  **Interagency Operating Procedures:**  The BLM and the FS shall review the IOPs adopted in their respective Records of Decision designating energy corridors (January 2009).  The BLM and the FS shall review the current utility of the IOPs and pertinent new data and shall actively solicit suggestions from stakeholders for changes to the IOPs.  The BLM and FS shall consider new IOPs submitted by Plaintiffs for specific resources including, but not limited to, wildlife, wilderness characteristics, and special areas.  The BLM and the FS shall develop recommendations for updating the IOPs concurrently with their periodic review of section 368 corridors.

e.  **Implementation of Workgroup Recommendations:**  Workgroup recommendations for section 368 corridor revisions, deletions, or additions will be considered for implementation through the BLM and the FS land use planning and environmental review processes.  There are three circumstances when such consideration may occur:

- During the normal course of land use plan(s) revisions;
- During an amendment to a land use plan(s) caused by a specific project proposal that does not conform to a land use plan, or when issues within a designated section 368 corridor necessitate review of an alternative corridor path; or
- During an amendment to individual land use plans specifically to address corridor changes.

BLM and FS will adopt recommended changes to the IOPs (additions, revisions, deletions) through internal guidance or manuals or handbooks.

f.  **Stakeholder Participation:**  There will be two significant opportunities for stakeholder participation:

- The workgroup will provide information to and solicit comment from the public regarding its periodic review of corridors and consequent

7

recommendations, and also engage in consultation with other federal agencies, tribes, states, local governments, and other interested persons through an active exchange of information and opinion during review and before the workgroup makes a recommendation(s). Workgroup members will use this same process in their periodic review of BLM and FS IOPs and recommendations therefor. The MOU will outline appropriate means for conducting outreach, which may include listening sessions/information sharing, web postings/comments, or other appropriate means.

- Any land use plan amendments that consider workgroup recommendations will require evaluation under NEPA in accordance with applicable law, regulations, and agency policy and guidance. The agencies agree to a robust public involvement process and will ensure that:

    o The NEPA process follows agency procedures, including all applicable opportunities for stakeholder, tribal, state, and local government participation;

    o All potentially interested parties are provided opportunities to participate in scoping and the environmental review process as required by agency procedures;

    o Opportunities for full involvement of minority populations, low-income communities, and tribes are promoted and provided by the agencies.

**g.     Agency Responsibilities:**

- BLM, FS, and DOE will each identify an official responsible for implementation of this settlement agreement.

- The DOE shall provide technical review, advice, and assistance regarding:

    o The need for proposed energy transport facilities;

    o The practical functionality of section 368 corridors;

8

> o The impact on reliability and electric system operation for facilities located outside section 368 corridors; and
>
> o Other technical factors relevant to siting energy transport facilities.

- The BLM and the FS will make recommendations for revisions, deletions, and additions to section 368 corridors and ensure that these recommendations are considered, consistent with applicable law, regulations, agency policy and guidance, and this Agreement.

**h.** **Working Group Duration:** The interagency workgroup will convene upon signing the MOU and remain in effect until any of its participating agencies determines that the workgroup no longer serves a purpose, but no less than two years following the signing of the MOU. The workgroup shall provide a brief annual report to each agency's MOU signatory, assessing the effectiveness of the workgroup, progress on the settlement agreement commitments, and the current utility of the group. The report will be made available to the public along with a summary of any revisions, deletions, or additions to the section 368 corridors completed at that time.

2. <u>Agency Guidance</u>: The BLM and the FS agree to issue internal guidance to managers and staff regarding use and development of the section 368 corridors. As part of this guidance, the agencies will provide direction on using corridors of concern and will identify known conflicts within these corridors. The BLM and the FS will also issue direction, consistent with applicable NEPA regulations, on how to use the Final Programmatic Environmental Impact Statement ("FPEIS"), *Designation of Energy Corridors on Federal Land in the 11 Western States (DOE/EIS-0386),* when preparing site-specific NEPA documents.

The BLM and the FS shall develop coordinated guidance for agency managers regarding use of section 368 corridors, and the guidance shall include the following elements:

**a.** **Corridor Use:** BLM and FS managers will: encourage project proponents to locate projects within designated corridors or adjacent to existing rights-of-

way; notify project proponents of any section 368 corridor segments that are corridors of concern; and consider alternative locations if a proposed project would be located within a section 368 corridor of concern segment. The agencies recognize that siting projects within corridors will require site-specific environmental analysis, as well as review of land use plans, as required by applicable law, regulations, and agency policy and guidance.

**b.**     **Corridors of Concern:**  BLM and FS managers will be notified of those corridors of concern set forth by the plaintiffs at Exhibit A and the concerns identified there.  Managers and the public will be notified that siting projects within these corridors will likely lead to heightened public interest and concern and may:

- Be challenged;
- Involve  significant environmental impacts;
- Involve substantially increased or extensive mitigation measures such as off-site mitigation to compensate for impacts to sensitive resources;
- Include  preparation of an environmental impact statement;
- Include consideration of alternatives outside the corridor  and consideration of an alternative that denies the requested use; and
- Include amendment of the applicable land use plan to modify or delete the corridor of concern and designate an alternative corridor.

**c.**     **Use of the FPEIS:**

- BLM and FS will be reminded that site-specific projects in a section 368 corridor will require individual NEPA analysis.  The scope of that NEPA review will include analysis of whether the use of that corridor identified in the FPEIS is appropriate in the context of the site-specific project and/or whether additional analysis should be undertaken to modify or delete the corridor and designate an alternative corridor.

- BLM and FS will encourage "incorporation by reference" of data and studies in the FPEIS and other relevant documents, as appropriate for individual projects and consistent with NEPA regulations, in order to reduce bulky and redundant studies.

- BLM and FS managers will be directed that tiering to the FPEIS is not a substitute for site-specific analyses of any project proposed within a section 368 corridor and that environmental reviews of projects within section 368 corridors are subject to this settlement agreement and the NEPA regulations at 40 C.F.R. § 1502.20 and 40 C.F.R. § 1508.28.

**d.** **Implementation of IOPs:**  Guidance will include:

- Procedures for periodic review and update of IOPs, based on the principles of adaptive management and including stakeholder engagement;

- Use of IOPs outside designated corridors on Federal lands; and

- Adoption of IOPs considered and approved by the agencies, particularly with reference to wilderness characteristics, wildlife, and special areas.

**e.** **Corridor Changes:**  Guidance will remind managers that revisions, deletions, and additions to section 368 corridors must (at a minimum) meet the requirements specified for these corridors in section 368 of the EPAct and must consider the siting principles identified in section 1.c. above.

3. <u>Training</u>:  The BLM and the FS agree to incorporate environmental concerns into agency training regarding the processing of applications for pipeline and electricity transmission ROWs, and to invite participation from representatives of environmental groups, tribes, and industry in such courses.  The BLM and the FS agree to review existing training materials and incorporate an increased emphasis on environmental considerations when siting and permitting pipelines and transmission lines.  Specifically these courses are the BLM's Electric Systems Short Course offered once annually at the BLM National Training Center in Phoenix, Arizona; the BLM's Pipelines Systems Course offered once annually in Durango, Colorado; and the

11

National Lands Training for Line Officer and Program Managers, which is jointly offered by the BLM and FS once annually in various locations.

    4.    <u>Corridor Study</u>:  The BLM and the FS agree to study section 368 corridors in order to assess their overall usefulness with regard to various factors, including their effectiveness in reducing the proliferation of dispersed ROWs crossing the landscape of federal lands.

    The agencies will study the section 368 corridors to assess their efficient and effective use and record practical lessons learned.  The interagency workgroup will develop a corridor monitoring plan to support this study.  The study is anticipated to involve an identification of the types and numbers of projects within the corridors, as well as the widths and lengths of existing ROWs within the corridors.  The study would also identify where corridors are being over- or underutilized and would evaluate use of the IOPs in order to recommend potential new or modified IOPs.  The study will inform the periodic review of section 368 corridors and IOPs (above at 1.b.) and be made public upon completion.

    5.    <u>IM 2010-169</u>**:**  BLM agrees to delete a section, entitled "Environmental Review and Energy Corridors," from Instruction Memorandum No. 2010-169, dated July 28, 2010, upon issuance of a new BLM instruction memorandum setting forth guidance for the siting and construction of electric transmission infrastructure in section 368 corridors.  BLM Instruction Memorandum No. 2010-169, dated July 28, 2010, is entitled "Implementation Guidance for the Interagency Transmission Memorandum of Understanding."  The memorandum of understanding referred to was entered into by nine federal agencies in October 2009 to expedite the siting and construction of qualified electric transmission infrastructure in the United States. IM 2010-169 contains a three-paragraph section entitled "Environmental Review and Energy Corridors," which addresses section 368 corridors and directs BLM managers to tier to the environmental analysis in the FPEIS to the extent the FPEIS addresses anticipated issues and concerns associated with individual qualifying projects.

B.    **Time Line for Implementation of Agreement**

The agencies agree to make every effort to meet the timelines identified below.  Should the agencies be unable to meet these internal timelines for any reason, the BLM Assistant Director for Minerals and Realty Management will notify the plaintiffs and explain the circumstances causing the delay.

- Upon the Effective Date (see Section III.I) of the settlement agreement, the provisions of section II.A.2.c. shall apply.

- Upon the Effective Date of the settlement agreement, the agencies will complete a MOU within twelve months.  Progress on completion of the MOU will be reported quarterly to the plaintiffs.  The final MOU will be made available to the public.  Upon signing the MOU, the agencies will commence a periodic review of section 368 corridors, with recommendations due twelve months thereafter.

- Upon the Effective Date of the settlement agreement, the BLM and the FS will initiate a review of current guidance.  New guidance will be developed concurrently with the MOU and will be completed within twelve months.  Progress on completion of guidance will be reported quarterly to the plaintiffs.  New guidance will be made available to the public.

- Upon the Effective Date of the settlement agreement, the BLM and the FS will initiate a review of current training materials, instructors, and outreach efforts.  Within three months the BLM and the FS will identify representatives to be invited to participate in future training.  Within twelve months training courses will be revised.  Progress on completion of training revisions will be reported quarterly to the plaintiffs.

- Upon the Effective Date of the settlement agreement, the agencies will initiate development of a plan to study use of the section 368 corridors.  The agencies will complete the work plan within twelve months of the Effective Date of the settlement agreement.  The study will be completed within twelve months of completion of the work plan.  The workgroup will report progress on the study quarterly to the plaintiffs.

13

## III. EFFECT OF SETTLEMENT

A.      Subject to Defendants' compliance with the terms of Paragraphs II.A. and II.B. of this Agreement, Plaintiffs release all claims in *The Wilderness Society, et al. v. United States Department of the Interior, et al.*, No. 3:09-cv-03048-JW (N.D. Cal.).

B.      Subject to the provisions of paragraph F below, upon signing the settlement agreement, plaintiffs will stipulate to the dismissal with prejudice of their amended complaint in *The Wilderness Society, et al. v. Department of the Interior, et al.,* No. 03:09-cv-03048 JW (N.D. Cal.). However, the Court shall retain jurisdiction over this action for the limited purpose of resolving settlement implementation disputes pursuant to the provisions of Paragraph F, below, until each of the following events has occurred: (1) 24 months have elapsed following execution of the MOU in accordance with Section II.A.1, above; and (2) the following undertakings have been completed: (a) new guidance has been developed in accordance with Section II.A.2, above; (b) training materials have been revised in accordance with Section II.A.3, above; (c) the Corridor Study has been completed in accordance with Section II.A.4, above; and (d) IM 2010-169 is revised in accordance with Section II.A.5, above.

C.      The Federal Defendants, through the BLM and the FS, shall pay Plaintiffs the sum of $30,000.00, in full settlement and satisfaction of all of Plaintiffs' claims for attorneys' fees, costs, and other expenses in the above-captioned case. Payment shall be accomplished by electronic fund transfer. Within 5 business days of the date this Settlement Agreement is filed, Plaintiffs shall submit (if not already submitted) the account information and other information necessary for the Federal Defendants to process payment. The BLM and the FS shall undertake the procedures for processing payment within 20 days after this Settlement Agreement is filed or Plaintiffs submit the required payment information, whichever is later.

1.      Release: Plaintiffs will accept the sum of $30,000.00 in full settlement and satisfaction of all of their claims for attorneys' fees, costs, and other expenses in this matter and release the Federal Defendants from any liability for attorneys' fees, costs, and other expenses incurred or claimed, or that could have been claimed, for work performed on this case, under the

14

Equal Access to Justice Act, 28 U.S.C. § 2412, or under any other federal or state statute or common law.  Plaintiffs or their counsel shall submit confirmation of receipt of payment in the above amount to counsel for Federal Defendants, within 14 days of receipt of payment.

   2. <u>Payee</u>:  Plaintiffs represent that the proper entity to receive payment pursuant to this Settlement Agreement is Earthjustice (tax ID is 94-1730465).  Payment shall be made to Earthjustice by Electronic Funds Transfer payable to:

> Mechanics Bank
> 725 Alfred Nobel Drive
> Hercules, California  94547
> Bank Routing #121102036
> ACCT # 040-882578

Plaintiffs and their attorneys agree that the Federal Defendants' responsibility in discharging the payment obligation provided in this Settlement Agreement consists only of making the payment to Earthjustice in the manner set forth herein.

D. Any term set forth in this Agreement (including deadlines and other terms) may be modified by written agreement of the Parties.

E. Except as expressly provided in this Agreement, neither of the Parties waives or relinquishes any legal rights, claims, or defenses it may have.

F. In the event of a disagreement among the Parties concerning the performance of any aspect of this Agreement, the dissatisfied party shall provide the other party with written notice of the dispute and a request for negotiations.  The Parties shall meet and confer in order to attempt to resolve the dispute within 30 days of the date of the written notice, or such time thereafter as is mutually agreed.  If the Parties are unable to resolve the dispute within 90 days after such meeting, then any Party may apply to the Court for resolution.   In resolving such dispute, the Court's review shall be limited to determining: (1) whether the Federal Defendants have reasonably complied with the performance deadlines set forth in Section II.B; (2) whether the MOU required by Section II.A.1 contains the terms required by this Agreement; (3) whether the guidance issued in accordance with Section II.A.2 contains the terms required by this Agreement; (4) whether the training developed by the agencies addresses the issues identified in

Section II.A.3; (5) whether the study prepared by the agencies contains the terms set forth in Section II.A.4; and (6) whether IM 2010-169 has been revised in accordance with Section II.A.5. The Parties agree that any challenge to a final decision concerning amendments or revisions to land use plans, as well as to final decisions concerning revisions, deletions, or additions to Section 368 corridors, must take the form of a new civil action under the judicial review procedures of the Administrative Procedure Act, 5 U.S.C. §§ 701–706. The parties will not seek the remedy of contempt for any alleged violation of the settlement agreement.

G.      Any notices required or provided for under this Agreement shall be in writing, shall be effective upon receipt, and shall be sent to the following:

For Plaintiffs:

BARK
Alex Brown, Executive Director
PO Box 12065
Portland, OR 97212
205 SE Grand, Suite 207
Portland, OR  97214
alex@bark-out.org
503-331-0374

Center for Biological Diversity
Amy R. Atwood
P.O. Box 11374
Portland, OR 97211-0374
Tel: (503) 283-5474
Fax: (503) 283-5528
Email: atwood@biologicaldiversity.org

Defenders of Wildlife
Erin Lieberman
1130 17th Street, NW
Washington, DC  20036-4604
202-772-3273
ELIEBERMAN@defenders.org

Great Old Broads for Wilderness
Veronica Egan
P.O. Box 2924
Durango, CO 81302
Phone:  970-385-9577
Fax:  970-385-8550
Ronnie@greatoldbroads.org

Klamath Siskiyou Wildlands Center
George Sexton, Conservation Director
PO Box 102
Ashland, OR 97520
(541) 488-5789
gs@kswild.org

National Parks Conservation Association
David Nimkin, Senior Director,
Southwest Region
307 West 200 South, Suite 5000
Salt Lake City, Utah 84101
801  /521-0785
801 / 359-2367 fax
dnimkin@npca.org

National Trust For Historic Preservation
Betsy Merritt
1785 Massachusetts Ave, NW
Washington, DC 20036
T: 202-588-6026|Fax: 202-588-6272
betsy_merritt@nthp.org

Natural Resources Defense Council
Johanna Wald
111 Sutter Street, 20th Floor
San Francisco, CA 94104
415-875-6100
jwald@nrdc.org

16

Oregon Natural Desert Association
Peter "Mac" Lacy, Senior Attorney
917 SW Oak Street, Suite 408
Portland, OR  97205
503-525-0193
lacy@onda.org

San Miguel County
Steven J. Zwick
San Miguel County Attorney
P.O. Box 791
333 West Colorado Avenue, 3rd Floor
Telluride, CO  81435
stevez@sanmiguelcounty.org
Tel.:  970-728-3879
FAX:  970-728-3718

Sierra Club
Ellen Medlin
Associate Attorney
Sierra Club Environmental Law Program
85 2nd St., 2nd Floor
San Francisco, CA 94105
ellen.medlin@sierraclub.org
415-977-5646

Southern Utah Wilderness Alliance
PO Box 968
Moab,UT  84532
Phone: 435.259.5440
FAX:  435.259.9151
liz@suwa.org

For Defendants:

David B. Glazer
Environment and Natural Resources Division
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, California  94015
Tel.: 415-744-6477
E-mail: david.glazer@usdoj.gov

Meredith L. Flax
U.S. Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
Ben Franklin Station, P.O. Box 7369
Washington, D.C. 20044-7369
Tel.: 202-305-0404
E-mail: meredith.flax@usdoj.gov

Attn:  Liz Thomas, Attorney

The Wilderness Society
Nada Culver
The Wilderness Society
1660 Wynkoop Street, Suite 850
Denver, CO 80202
Nada_culver@tws.org
(303) 650-5818

Western Resource Advocates
Gary Graham
Staff Attorney, Energy Transmission
2260 Baseline Rd., Suite 200
Boulder, CO  80302
PH:  303-444-1188 ext. 244
FX:  303-786-8054
tom@westernresources.org

Western Watersheds Project
Michael J. Connor, Ph.D
Western Watersheds Project
P.O. Box 2364
Reseda, CA 91337-2364
mjconnor@westernwatersheds.org
(818) 345-0425

17

H.     Upon written notice to the other party, either party may designate a successor contact person for any matter relating to this Agreement.

I.     The undersigned representatives of each party certify that they are fully authorized by the parties they represent to bind the respective Parties to the terms of this Agreement.  This Agreement shall become effective upon signature on behalf of all of the Parties set forth below and upon the Court's entry of an order of dismissal in accordance with Section III.B above (the "Effective Date").  This Agreement may be executed in any number of counterpart originals, each of which shall be deemed to constitute an original agreement, and all of which shall constitute one agreement.  The execution of one counterpart by any party shall have the same force and effect as if that party has signed all other counterparts.

ON BEHALF OF ALL PLAINTIFFS

DATED:  July 3, 2012                    */s/James S. Angell*

JAMES S. ANGELL
(Admitted *pro hac vice*)
Earthjustice
1400 Glenarm Place, Suite 300
Denver, CO 80202
Tel:     (303) 623-9466
Fax:     (303) 623-8083
E-mail:  jangell@earthjustice.org

GREGORY C. LOARIE
(Cal. Bar No. 2151859)
Earthjustice
426 17th Street, 6th Floor
Oakland, CA  94612
Tel:     (510) 550-6700
Fax:     (510) 550-6740
E-mal:  gloarie@earthjustice.org

*Counsel for Plaintiffs, The Wilderness Society, Bark; Center for Biological Diversity; Defenders of Wildlife; Great Old Broads for Wilderness; Klamath-Siskiyou Wildlands Center; National Parks Conservation Association; National Trust for Historic Preservation; Natural Resources Defense Council; Oregon Natural Desert Association; Sierra Club; Southern Utah Wilderness Alliance; Western Resource Advocates; Western Watersheds Project; County of San Miguel, CO*

AMY R. ATWOOD
(Admitted *pro hac vice*)
Center for Biological Diversity
P.O. Box 11374
Portland, OR 97211-0374
Tel:    (503) 283-5474
Fax:    (503) 283-5528
E-mail: atwood@biologicaldiversity.org

*Counsel for Plaintiffs, Center for Biological Diversity; The Wilderness Society; Klamath-Siskiyou Wildlands Center; and San Miguel County, Colorado*


FOR THE FEDERAL DEFENDANTS:

IGNACIA S. MORENO
Assistant Attorney General

DATED:  July 3, 2012                     /s/ David B. Glazer
                                         DAVID B. GLAZER
                                         Natural Resources Section
                                         Environment and Natural Resources Div.
                                         United States Department of Justice
                                         301 Howard Street, Suite 1050
                                         San Francisco, California 94105
                                         Telephone: (415) 744-6491
                                         Facsimile:  (415) 744-6476
                                         e-mail: david.glazer@usdoj.gov

19

ATTORNEY ATTESTATION OF CONCURRENCE

I hereby attest that I have obtained concurrence in this filing and for affixing the signature of Plaintiffs' counsel, indicated by a "conformed" signature ("/s/"), to this e-filed document, in accordance with General Order 45.X.


Dated:  July 3, 2012                    /s/*David B. Glazer*
                                        DAVID B. GLAZER
                                        Natural Resources Section
                                        Environment and Natural Resources
                                        Division
                                        United States Department of Justice
                                        301 Howard Street, Suite 1050
                                        San Francisco, California  94105
                                        Telephone:     (415) 744-6491
                                        Facsimile:     (415) 744-6476
                                        E-mail:  david.glazer@usdoj.gov